UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK DUANE BEARDSLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

Case No. 1:14-cv-517
Hon. Hugh W. Brenneman, Jr.

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on April 18, 1964 (AR 179).[1] He alleged a disability onset date of November 10, 2010, which he later amended to April 1, 2010 (AR 22, 179). Plaintiff completed the 12th grade and had previous employment as an automotive mechanic (AR 185). Plaintiff identified his disabling conditions as: attention deficit hyperactivity disorder (ADHD); anxiety; depression; "right hip issues"; and "right leg issues" (AR 184). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on December 21, 2012 (AR 22-34). The ALJ's decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human*

*Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended onset date of April 1, 2010, and that he met the insured status requirements of the Act through December 31, 2014 (AR 24). At the second step, the ALJ found that plaintiff had the following severe impairments: gout; hypertension; cirrhosis of the liver; depression; anxiety; and substance abuse disorder (alcohol in partial remission) (AR 24). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and or walk for about 6 hours and sit for up to 6 hours in an 8 hour work day with normal breaks; limited to foot control operation with the right lower extremity to no more than on an occasional basis; limited to frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolds; no limitations with respect to balancing; limited to frequent stooping, kneeling, crouching and crawling; avoid all exposure to hazardous machinery and unprotected heights; limited to jobs composed of 1 or 2 step tasks, that is simple, routine and repetitive in nature in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any work place changes; limited to only occasional interaction with the public with no transactional work and occasional interaction with co-workers with no tandem tasks; work is isolated with only occasional supervision.

(AR 27). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 32).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 33-34). Specifically, plaintiff could perform the following work in the Lower Peninsular of Michigan: office cleaner (15,000 jobs); and

4

production inspection (4,000 jobs) (AR 33-34). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2010 (the amended alleged onset date) through December 21, 2012 (the date of the decision) (AR 34).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. The ALJ committed reversible error by not properly evaluating the medical evidence.

Plaintiff claims that the ALJ improperly relied on the first of two reports prepared by examining psychologist Dennis Mulder, Ed. D. and that the ALJ improperly rejected the opinion of a treating physician, Erwin Grasman, M.D. Plaintiff's Brief at pp. ID## 430-31 (docket no. 12).

#### 1. Dr. Mulder's opinions

Dr. Mulder examined plaintiff twice. He submitted two reports: a May 9, 2011 "Psychiatric/Psychological Medical Report" prepared for the State of Michigan Disability Determination Service (Exh. 4F) (AR 276-80); and a November 1, 2012 report consisting of a "Medical source statement of ability to do work-related activities (mental)" and a "Psychological Evaluation" prepared for plaintiff's attorney (Exhs. 13F and 14F) (AR 341-49).

The ALJ addressed Dr. Mulder's May 9, 2011 report as follows:

> Addressing the claimant's depression, anxiety and alcohol abuse in partial remission, the record indicates the claimant reported in the May 2011 consultative examination with Dr. Mulder that his mental symptoms had increased with the death of his mother in January 2010 and reported the loss of several additionally [sic] family members within the last year (Exhibit 4F). He indicated he had frequent panic attacks, crying spells and had tendencies to withdraw from others. Moreover, he reported his prescribed medication were not relieving his depression and anxiety symptoms and he was drinking one pint of whiskey a week. Additionally, he indicated he had a good relationship with his son and had two to five close friends outside of family. Upon exam, he was in contact with reality, he was cooperative, yet subdued, depressed looking, and tearful. Nevertheless, he appeared to be relaxed

5

and oriented, his thought processes were relevant, logical and connected, he had no motor coordination problems and his speech was clear, coherent, and fluent. Although, he complained of feeling hopeless and worthless, he denied any thoughts of suicide, any suicide attempts, or any homicidal thoughts. He was not somatically preoccupied, and he did not describe any significant sleep or appetite disturbance. Dr. Mulder assigned a Global Assessment of Functioning (GAF) rating of 55 to 60, which reflects only moderate symptoms or moderate difficulty in social or occupational functioning.

The ALJ then addressed Dr. Mulder's November 1, 2012 report and statement regarding plaintiff's ability to perform work-related activities as follows:

In a subsequent psychological evaluation in November 2012, Dr. Mulder, noted the claimant complained of a daily and constant pain in his back to the point where he could not sit, stand, walk or lie down for long periods of time, and that the pain disturbed both his sleep and his appetite. He also complained of having arthritis and gout, which further accentuated his physical distress. Dr. Mulder noted the claimant appeared to be in both physical distress and psychological distress. Moreover, the claimant has a history of depression from multiple deaths in his family, including his mother, within the last three years, as well as depression due to the ongoing pain and not being able to do what he use to do. He complained of having daily panic attacks for the past three years, which further emphasized his psychological distress. Further, Dr. Mulder noted the claimant does have a history of abusing alcohol, but he was in partial remission at the time of the exam. Dr. Mulder assigned a GAF rating of 50 (Exhibit 14F).

\*   \*   \*

I have considered Dr. Mulder's November 2012 psychological assessment, which found the claimant, [sic] had mild limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. He found the claimant had extreme limitation on complex instructions and marked limitation in his ability to interact with the public, extreme limitations in interacting with supervisors, and marked limitations in interacting with co-workers. Moreover, he stated the claimant had marked limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting. Further, he opined the potential for the claimant becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is guarded to poor. The combination of the claimant's physical distress, along with his clinically significant psychological distress greatly interferes with his ability to function at a level necessary for him to obtain and maintain full-time gainful employment. He further opined that the claimant meets the Listings at 12.04 and 12.06, and that he has been unable to work on a sustained

>basis since early 2010 (Exhibit 13F;14F).

(AR 28-29, 32).

The ALJ then compared Dr. Mulder's reports, giving "great weight" to the May 2011 report and "little weight" to the November 2012 report:

>I have considered the May 2011 and November 2012 assessments of Dr. Mulder and afford great weight to the May 2011 assessment [sic] relates to the nature and severity of the claimant's impairment, is consistent with the medical evidence of record and is supported by detailed examination signs and findings. However, the November 2012 assessment is afforded little weight as it is inconsistent with the claimant's response to medication, he has only received routine counseling, has only treated with typical antidepressants in typical doses from his primary care provider, his mental exams were relatively normal, he had no emergency room visits for exacerbation of psychotropic symptoms and has not required psychiatric hospitalization.

(AR 32).

An ALJ can rely on the opinions of examining physicians or psychologists as substantial evidence to support his decision. *See* 20 C.F.R. §§ 404.1527(a)-(c) and 416.927(a)-(c).; *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). As the ALJ noted, Dr. Mulder provided differing opinions. "It is the Commissioner's function to resolve conflicts in the medical evidence," *Craft v. Commissioner of Social Security*, 39 Fed.Appx. 274, 276 (6th Cir. 2002), including "any conflicts among the opinions of treating and examining physicians," *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). Here, the ALJ had differing opinions from Dr. Mulder and stated his reasons for accepting the May 2011 opinion rather than the November 2012 opinion. In reaching his decision, the ALJ noted the lack of medical evidence to support Dr. Mulder's changed opinion. The ALJ could properly decline to adopt Dr. Mulder's later opinion, because it was not supported by objective medical evidence of the need for additional restrictions. *See Stanley*

7

*v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) (when a treating physician changes his opinion to include additional functional limitations, an ALJ does not err in rejecting the changed opinion if the physician "did not provide any objective medical evidence to support his change of heart"). Here, Dr. Mulder assigned the lower GAF score of 50 because "it appears that the patient's psychological condition has deteriorated significantly as a result of his physical distress and diminished functional ability" (AR 348). This conclusory observation is not "objective medical evidence" sufficient to support a more restrictive opinion. Plaintiff's claim of error will be denied.

### 2. Treating physician Erwin Grasman, M.D.

Plaintiff also contends that the ALJ improperly evaluated the opinions given by his treating physician, Dr. Grasman. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ addressed Dr. Grasman's opinions as follows:

> Erwin Grasman, M.D., completed a physical assessment in October 2012, and opined the claimant could lift and carry up to 10 pounds occasionally, could sit 2 hours and stand and walk 1-hour total in 8-hour workday. He could occasionally reach, handle, finger and feel with the right hand, but never reach, finger, or feel with left hand, and occasionally handle. He can never push and or pull with the bilateral hands. In addition, the claimant can never operate foot controls with the bilateral lower extremities, can occasionally climb stairs and ramps and stoop; but never climb ladders, or scaffolds, balance, knee, crouch, or crawl. Further, he found the claimant should avoid hazards in the workplace, such as boxes on the floor, doors ajar or approaching people or vehicles. He is limited to only occasional exposure to moving mechanical parts or operating a motor vehicle. Moreover, he stated the claimant should avoid all exposure to unprotected heights, humidity or wetness, dust, odors, fumes and pulmonary irritants, extreme cold and heat and moderate office noise. Further, he found the claimant limited to no walking on rough or uneven surfaces. Lastly, Dr. Grasman opined the claimant's back problems, anxiety and depression prevent him from any full-time work 8 hours a day, 5 days a week (Exhibit 12F). The opinion of Dr. Grasman is afford [sic] little weight as his opinion related to the claimant's psychological limitations are out of his area of specialization and the

9

> physical limits exceed the objective evidence in the case. Moreover, his treatment has been essentially conservative with pain medication; he has not been referred to an orthopedic specialist, has not required surgery, has not actively participated in physical therapy or pain management program and has not required an assistive device for ambulation. Further, in his own report he noted the claimant could, [sic] shop and travel without assistance, he required no assistive devices, he could use public transportation, climb a few stairs, prepare simple meals, care for his personal hygiene, and sort, handle or use paper files.

(AR 30-31).

Plaintiff contends that he "presented an RFC from his treating physician (Dr. Grasman) which was not compatible with work" and that "the ALJ refused to give their opinions the proper weight, allegedly because the treatment notes did not reflect the kind of treatment that he thought was sufficient to demonstrate disability." Plaintiff's Brief at p. ID# 431. Plaintiff also noted that the ALJ gave little weight to Dr. Grasman's opinion regarding plaintiff's mental limitations because the doctor "was not allegedly qualified to make any observations about his mental condition." *Id.* at p. ID# 428.

Based on this record, the Court concludes that the ALJ failed to give good reasons for the weight assigned to Dr. Grasman's opinions. *See Wilson*, 378 F.3d at 545. While the ALJ stated that Dr. Grasman's "physical limits exceed the objective evidence in the case," the ALJ did not identify any such objective evidence. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

In addition, the ALJ improperly discounted Dr. Grasman's opinion related to plaintiff's psychological limitations, stating that such limitations "are out of [Dr. Grasman's] area

of specialization" (AR 30).  As an M.D., Dr. Grasman was qualified to treat plaintiff's mental problems and could prescribe medication, a treatment option not available to psychologists.  *See Lawson v. Commissioner,* No. 1:11-cv-533, 2012 WL 4356804 at *4-6 (W.D. Mich. Sept. 24, 2012); *Walker v. Eyke*, 417 Fed.Appx. 461, 464 (6th Cir. 2011) (in Michigan "[t]he practice of psychology does not include the practice of medicine such as prescribing drugs, performing surgery, or administering electro-convulsive therapy").  Accordingly, this matter will be reversed on remanded pursuant to 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Grasman's treatment notes and opinions consistent with this Opinion.

> **B.    The ALJ committed reversible error by misusing the GAF scores in this case.**

Dr. Mulder assigned plaintiff GAF scores of "50" and "55 to 60".[2]  A GAF score of 50 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.  GAF scores between 55 to 60 lie within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning

---

[2] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score of 100 to 91 has "no symptoms."  *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id.*

(e.g., few friends, conflicts with peers or co-workers)." *Id.* Plaintiff contends that he is entitled to a reversal of the ALJ's decision because the ALJ improperly adopted the higher GAF scores, noting that where multiple GAF scores had been assigned, "the ALJ could not simply choose which scores he wanted to follow." Plaintiff's Brief at p. ID# 432.[3]

The ALJ addressed plaintiff's GAF scores as follows:

> Although the claimant has a GAF score in the record at 50 (Exhibit 14F), I note that the global assessment of functioning is only a subjective estimate by a clinician and is based in large part on the claimant's self-reported complaints at the time and did not recognize the claimant's improvement with treatment. I find that the consistency of the higher GAF scores in the record and the preponderance of the examination findings from the claimant's primary care provider and his examining sources supports a reasonable inference that the claimant experiences only moderate difficulties in functioning. Moreover, the claimant has only received routine counseling, has only treated with typical antidepressants in typical doses from his primary care provider, his mental exams were relatively normal, he had no emergency room visits for exacerbation of psychotropic symptoms and has not required psychiatric hospitalization.

(AR 29).

Plaintiff's reliance on the GAF scores is misplaced. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). On the contrary, a GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to

---

[3] In support of his position, plaintiff cited *Boruff v. Astrue*, 648 F.Supp.2d 932 (E.D. Mich.2009), in which the court concluded that "[t]he ALJ's finding that a GAF score of 50 is not consistent with the record as a whole is not supported by substantial evidence." *Boruff*, 648 F.Supp.2d at 944.

Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). The ALJ recognized the limited significance of the GAF scores assigned by Dr. Mulder. To the extent that the ALJ found the GAF scores relevant, he provided reasons for accepting the higher scores. This claim of error will be denied.

   **C.**  **The ALJ committed reversible error by failing to follow the vocational expert's accurate answers to hypothetical questions.**

Plaintiff contends in a conclusory fashion that the ALJ's hypothetical question posed to the vocational expert (VE) did not accurately portray his impairments because "the ALJ's opinion directly concluded that the restrictions imposed by Drs. Grasman and Montes were not compatible with work." Plaintiff's Brief at p. ID# 433.[4] An ALJ's finding that a plaintiff possesses the capacity

---

[4] The Court notes that an orthopaedic surgeon, Stephen Montes, D.O., examined plaintiff and provided a report and assessment of his ability to do work related activities (physical) (AR 350-71). While plaintiff's brief mentioned Dr. Montes, it did not address any error with respect to the ALJ's evaluation of the doctor's opinions. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). As discussed, this matter is being remanded for a re-evaluation of Dr. Grasman's opinion. If this re-evaluation results in a new RFC, then the ALJ should also re-evaluate the vocational evidence provided by the VE at step five.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is

---

developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

directed to re-evaluate Dr. Grasman's treatment notes and opinions. If this re-evaluation results in a new RFC, then the ALJ should also re-evaluate the vocational evidence at step five.  A judgment consistent with this opinion will be issued forthwith.

Dated:  July 13, 2015 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge